UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED

JAN 2 3 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES OF AMERICA,   )
                            )
        v.                  )
                            )   Criminal Action No. 02-475 (RWR)
RAMENDRA BASU,              )
                            )
        Defendant.          )
_____)

MEMORANDUM ORDER

Defendant Ramendra Basu has moved to withdraw his guilty
plea to one count of conspiracy to commit wire fraud, in
violation of 18 U.S.C. § 371, and one count of corruptly using
instrumentalities of interstate commerce, in violation of the
Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-3.  Basu alleges
legal innocence, attributing his mistaken plea to his
misunderstanding of the intent element of the criminal charges to
which he pled, and the pressure he felt to enter the plea in
haste.  Because Basu's plea was voluntarily entered and his claim
of innocence lacks evidentiary support, the motion to withdraw
his plea will be denied.

BACKGROUND

On November 26, 2002, Ramendra Basu was charged in a two
count information with conspiracy to commit wire fraud in
violation of 18 U.S.C. § 371, and corruptly using
instrumentalities of interstate commerce in violation of the
Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-3.  On

-2-

December 17, 2002, Basu chose to waive his right to be indicted by a grand jury and pled guilty to both counts.  The factual proffer agreed to by Basu sets forth the following facts.

Basu, a native of India, was an employee in the Consultant Trust Funds Office of the World Bank from 1996 to 2000, except for about three months in late 1997.  (Gov't Opp'n, Exh. 3b ¶ 2.) His duties included recommending consultants, who implement World Bank projects, to Task Managers and approving Task Managers' requests for Consultant Trust Fund monies to be released to the consultants.  (Id. ¶¶ 2, 4.)

In mid-1997, Basu met with a World Bank Task Manager and a prospective consultant from Sweden ("Swedish Consultant"). (Id. ¶ 5.)  Shortly thereafter, Basu entered into an agreement with the Task Manager and Swedish consultant to award business, funded by the World Bank's trust funds, to the Swedish Consultant with the understanding that once the funds were released to the Swedish Consultant, the Swedish Consultant would pay kickbacks to the Task Manager.  (Id. ¶ 11.)  Throughout 1998, Basu facilitated the payment of bribes by arranging meetings between the Task Manager and the Swedish Consultant in London, England.  (Id. ¶ 9.)

Basu also agreed to facilitate payment to a Kenyan government official with the knowledge that such payment would be used to corruptly influence the official to hire an American

consultant, a business associate of Basu, to perform work on an urban transport project.  (Id. ¶¶ 10, 12.)  The American consultant would forward a portion of the contractual money to the Swedish Consultant who in turn would pay kickbacks to the Kenyan official and the Task Manager.  (Id. ¶ 10.)  In furtherance of the corrupt payment to the Kenyan official, Basu passed critical information to his co-conspirators through electronic communication from Washington, D.C., to Sweden.  (Id. ¶ 12.)

On May 7, 2006, Basu filed a motion to withdraw his guilty plea claiming that he is innocent of the charges and that his plea was coerced.  The Government opposed, arguing that Basu fully understood the nature of the crimes that he pled guilty to and the plea colloquy made clear that his plea was voluntarily entered.  Because Basu's plea agreement required that he cooperate in the government's investigation into the World Bank fraud, his sentencing was continued pending the completion of his cooperation.

### DISCUSSION

Federal Rule of Criminal Procedure 11(d)(2)(B) permits a defendant to withdraw his guilty plea before a sentence is imposed upon a showing of a "fair and just reason" for requesting the withdrawal.  Fed. R. Crim. P. 11(d)(2)(B); United States v. Jones, 472 F.3d 905, 907 (D.C. Cir. 2007).  "Although presentence

-4-

withdrawal motions should be 'liberally granted,' they are 'not granted as a matter of right.'" United States v. Ahn, 231 F.3d 26, 30 (D.C. Cir. 2000) (quoting United States v. Ford, 993 F.2d 249, 251 (D.C. Cir. 1993); United States v. Loughery, 908 F.2d 1014, 1017 (D.C. Cir. 1990)). See also United States v. Shah, 453 F.3d 520, 521 (D.C. Cir. 2006). The decision to grant a withdrawal is within the discretion of the trial judge. See United States v. Tolson, 372 F. Supp. 2d 1, 8 (D.D.C. 2005).

Typically, courts look at several factors in deciding whether to grant a motion to withdraw a plea, including (1) whether the guilty plea was somehow tainted, (2) whether the defendant has asserted a viable claim of innocence, and (3) whether the delay between the guilty plea and the motion to withdraw has substantially prejudiced the government's ability to prosecute the case. United States v. West, 392 F.3d 450, 455 (D.C. Cir. 2004); United States v. Asaifi, Criminal Action No. 04-401 (RMC), 2007 WL 1322098, at *5 (D.D.C. May 3, 2007).

When a plea is tainted because it was entered unconstitutionally or contrary to Rule 11 procedures, the standard for granting a motion to withdraw is lenient. See United States v. Barker, 514 F.2d 208, 221 (D.C. Cir. 1975). However, where the plea itself was properly entered, "more substantial reasons for delay [between the entry of the plea and the filing of the motion] must generally be asserted." Id.

-5-

Accordingly, it is important to assess first the validity of the plea itself.

I.   VALIDITY OF THE PLEA

A plea of guilty is constitutionally valid if and only if it "'represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" United States v. McCoy, 215 F.3d 102, 107 (D.C. Cir. 2000) (quoting Hill v. Lockhart, 474 U.S. 52, 56 (1985)).  Rule 11 delineates procedural safeguards to ensure that a guilty plea is entered into knowingly, voluntarily and intelligently.[1]  See Fed. R. Crim. P. 11(b).  "An understanding of the crime to which a defendant is admitting guilt is a 'core consideration' of Rule 11."  United States v. Shah, 263 F. Supp. 2d 10, 21 (D.D.C. 2003) (quoting Ford, 993 F.2d at 251), aff'd but remanded on other grounds, 453 F.3d 520 (D.C. Cir. 2006).  "[T]he record of the plea colloquy must lead a reasonable person to believe that the

---

[1] In considering and accepting a guilty plea, a court must inform a defendant of a list of factors, including the right to plead not guilty; the right to a jury trial; the right to be represented by counsel at trial and at every other stage of the proceeding; the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses; the defendant's waiver of these trial rights if the court accepts a plea of guilty; the nature of each charge to which the defendant is pleading; and any maximum possible penalty.  Fed. R. Crim. P. 11(b)(1).  A court must also determine that a plea is voluntary and did not result from force, threats, or promises and that there is a factual basis for the plea.  Fed. R. Crim. P. 11(b)(2)-(3).

-6-

defendant understood the nature of the charge, such as through a judicial recitation of the material details of the charge."   Id.

Basu does not argue that the plea colloquy itself was unconstitutional and an examination of the transcript reveals that Basu's guilty plea was "attended by all the required procedural safeguards [of Rule 11]."   United States v. Cray, 47 F.3d 1203, 1208 (D.C. Cir. 1995).   The plea hearing engaged Basu in a thorough Rule 11 inquiry which elicited his understanding of, and agreement to, the fact that by pleading guilty he was "waiving his right to trial and his Fifth Amendment privilege against self-incrimination."   Shah, 453 F.3d at 522.   The transcript reflects Basu's confirmation that he had fully discussed the charges with his attorney, and understood the crimes to which he was admitting guilt.   (Plea Tr. 7:14-19.) Each material element of the charges was described to him and he was told that if he went to trial, the government would have to prove every element beyond a reasonable doubt before he could be found guilty.   (Id. at 28:8-29:19.)

Basu argues that his plea is tainted because he accepted it under pressure.   He claims that the offer presented was a "now or never" opportunity which implied that he would face a lengthy prison sentence if he did not agree.   However, Basu presents no legal support for the proposition that the presence of a deadline after which a plea offer will expire converts an otherwise valid

-7-

guilty plea into an involuntary one.  Moreover, at the plea

hearing, Basu answered affirmatively when asked if he had enough

time to talk with his attorney about the plea offer and whether

or not to accept it.  (Id. at 8:1-4.)  Basu was offered

additional time to consult with his attorney but said he did not

need to and was ready to enter his plea.  (Id. at 40:21-41:5.)

He signed a separate statement at the end of the written plea

agreement acknowledging that no one forced him in any way to

enter the agreement.  He was also asked if anyone forced,

threatened, or coerced him in any way into pleading guilty, to

which he answered "no."  (Id. at 40:5-8.)  Basu is highly

educated, holding two graduate degrees (id. at 5:18-19), and has

held responsible positions in international settings.  The

court's finding that Basu entered his plea voluntarily and

intelligently had an ample basis.

Basu further alleges that his plea is tainted because he

entered it on the advice of his attorney that he would "have no

chance at trial."  (Def.'s Mot. to Withdraw Plea, Mem. of P. &

A., Basu Aff. ("Basu Aff.") at 3.)  A plea based upon the advice

of counsel that "'falls below the level of reasonable competence

such that the defendant does not receive effective assistance' is

neither voluntary nor intelligent."  McCoy, 215 F.3d at 107

(quoting Loughery, 908 F.2d at 1019).  In order to show that his

plea was based upon constitutionally ineffective assistance of

-8-

counsel, Basu must show that counsel's performance was deficient,
meaning that the representation falls below an objective standard
of reasonableness, and that the deficiency prejudiced the
defendant.  See Strickland v. Washington, 466 U.S. 668, 687-88
(1984)).

Basu's claim of ineffective assistance has no evidentiary
support.  At all times during the plea negotiations and plea
hearing, he was represented by counsel.  If the defendant "is
represented by counsel during the plea process and enters his
plea upon the advice of counsel, the voluntariness of the plea
depends on whether counsel's advice 'was within the range of
competence demanded of attorneys in criminal cases.'"  Tolson,
372 F. Supp. 2d at 11.  It is not unreasonable for an attorney,
when assessing a client's case and the evidence put forward
against him, to express his view that the defendant has "no
chance at trial."  (Basu Aff. at 3.)  Cf. Tolson, 372 F. Supp. 2d
at 22 (finding that an attorney's statement that the defendant
was "not going to get out of this" was appropriate advice based
on the assessment of the case and even if it did amount to
coercion, the defendant had ample opportunity in the plea hearing
to notify the court); Hines v. Miller, 156 F. Supp. 2d 324, 330-
33 (S.D.N.Y. 2001) (explaining that counsel's assertion that the
defendant "had no chance to win at trial" amounted to no more
than candid advice which was professionally appropriate and

-9-

indicative of effective, rather than ineffective, assistance of

counsel).  Basu was provided with his attorney's candid

assessment of the charges against him and his chance of

prevailing at trial.  When asked at the plea colloquy if he was

pleased with his representation, Basu responded, "yes,

extremely."  (Plea Tr. 7:20-22.)  Moreover, Basu has not shown

that the facts to which he admitted at all suggest any deficiency

in his attorney's assessment of Basu's chances at trial.  There

is nothing in the record to suggest that counsel was ineffective

or the guilty plea was otherwise tainted.

II.  VIABLE CLAIM OF INNOCENCE

A defendant seeking to withdraw a guilty plea before

sentencing "must affirmatively advance an objectively reasonable

argument that he is innocent, for he has waived his right simply

to try his luck before a jury."  Asaifi, 2007 WL 1322098, at *5

(quoting United States v. Cray, 47 F.3d 1203, 1209 (D.C. Cir.

1995)).  A general denial of guilt is insufficient.  West, 392

F.3d at 456.  If withdrawal were automatic in every case where

the defendant merely asserts legal innocence and wishes "to alter

his tactics and present his theory of the case to the jury, the

guilty plea would become a mere gesture, a temporary and

meaningless formality reversible at the defendant's whim.  In

fact, however, a guilty plea is no such trifle, but 'a grave and

solemn act' which is 'accepted only with care and discernment.'"

Barker, 514 F.2d at 221 (quoting Brady v. United States, 397 U.S.
742, 748 (1970)).  Consideration "not only whether the defendant
has asserted his innocence, but also the reason why the defenses
now presented were not put forward at the time of [the] original
pleading" is important.  Barker, 514 F.2d at 221.

Basu's claim of innocence rests on his assertion that, as a
foreign citizen, he is not familiar with our judicial system and
the requirement that a criminal offense be accompanied by the
requisite intent.  Basu asserts that he is innocent because he
did not intend to facilitate any wrongdoing.  However, his
argument is unavailing.  During the plea colloquy, both charges
and all of the essential elements of both offenses, including the
intent elements, were explained to Basu.  (Plea Tr. 26:4-29:19.)
He was told that if the case went to trial, the government would
have to prove, with respect to the conspiracy charge, that Basu
"knew the purpose of the agreement and deliberately joined in
that agreement," and, with respect to the charge under the
Foreign Corrupt Practices Act, that he "acted corruptly and
willfully."  (Id. at 28:18-20, 29:6-7.)  Basu displayed an
understanding of the nature of the charges against him and
voluntarily affirmed his participation in the unlawful schemes
with the knowledge that they were unlawful.  (Id. at 37:8-39:7.)

-11-

Basu also argues that he did not initiate the relationship
between the Swedish Consultant and the Task Manager, never
arranged meetings between them in London, and, with respect to
the Kenyan official, was only told that he was helping an African
businessman maintain his money in Europe and not that the
movement of the money was actually for a corrupt purpose.  (Basu
Aff. at 1-2.)  Basu claims that he did not understand the true
facts until he traveled to Sweden for a deposition as part of his
cooperation with the government.  (Id. at 2.)

However, Basu's current assertions regarding his
incomprehension are contradicted by his prior admissions of
culpability made before his plea (see Gov't Opp'n, Exhs. 5, 6,
7),[2] and responses demonstrating his understanding of his
criminal conduct given during the Rule 11 plea colloquy.[3]
Additionally, he provides no evidentiary support for the new
assertions that he now makes years after his acceptance of
responsibility for the crimes.  Even if Basu did not initiate the
relationship between the Swedish Consultant and Task Manager, nor
plan meetings in London, he admitted at the plea colloquy that he
participated in the agreement to facilitate the bribes and

---

[2] For example, Basu admitted to receiving several payments
from Swedcon about which he had lied earlier (Gov't Opp'n, Exh. 7
at 3) facilitating kickbacks for others (id. at 4-5), and
creating a scheme to generate a bogus contract.  (Gov't Opp'n,
Exh. 5 at 17.)

[3] See Plea Tr. 7:8-19, 36:13-39:7.

-12-

understood its unlawful purpose.  Basu even corrected the court's

misarticulation of the facts related to the formation of the

conspiracy.  (Plea Tr. 37:3-7 ("It was not at the meeting that

any bribes were discussed but it was later on that the task

manager demanded bribes from the consultants.  It was not at that

meeting in mid-June, or mid-July, it was later on.").)  Finally,

he admitted that he knew the movement of money related to the

Kenyan official was for the purpose of inducing the official to

unlawfully steer contracts to an American contractor.  (Id.

at 38:24-39:7.)

    Basu was not coerced into accepting the truth of the factual

recital in the plea agreement.  The assertions he now makes imply

that he committed perjury during his plea, and "lying to a court

is not a 'fair and just' reason for allowing a plea to be

withdrawn."  Shah, 453 F.3d at 523 (internal citation omitted);

see also Barker, 514 F.2d at 223 (explaining that it is important

to consider whether a withdrawal motion "is premised on claims

directly contrary to the representations" made during the plea

hearing, and affirming denial of the motion to withdraw because

appellants willfully abused and misled the court).

III. PREJUDICE TO THE GOVERNMENT

    Prejudice to the government may properly be taken into

account when considering whether to allow a defendant to withdraw

a guilty plea, although it is not dispositive, particularly where

-13-

the plea was not tainted and a defendant has failed to present a

viable claim of innocence.  <u>West</u>, 392 F.3d at 457.  If the

defendant has long delayed his withdrawal motion, and has had the

full benefit of competent counsel at all times, the reasons given

to support withdrawal must have considerably more force given the

prejudice a withdrawal would inflict on the government.  <u>See</u>

<u>Barker</u>, 514 F.2d at 222.

Basu waited three years after entering his guilty plea to

seek it.  (<u>See</u> Mot. to Withdraw as Counsel [#28] at ¶ 6.)

Withdrawal of the plea now could "substantially prejudice

legitimate prosecution interests."  <u>Barker</u>, 514 F.2d at 223

(finding prejudice to the government if withdrawal was allowed

eight months after the plea had been entered).  The government

asserts prejudice by speculating, without substantiation, that

the memories of the witnesses will have been substantially

weakened in the time since Basu entered his plea.  Common human

experience comports with this speculation, though.  On balance,

Basu's weak arguments for withdrawing his plea do not prevail in

the face of the valid Rule 11 plea and the prejudice to the

government that might ensue if the plea is withdrawn.

CONCLUSION

Because Basu's guilty plea was entered voluntarily, the plea

colloquy satisfied Rule 11, his claim of innocence lacks

evidentiary support, and withdrawal could result in substantial

-14-

prejudice to the government, Basu's motion to withdraw his guilty plea will be denied.  Accordingly, it is hereby

ORDERED that defendant's motion to withdraw his guilty plea be, and hereby is, DENIED.  It is further

ORDERED that this matter be referred for a presentence investigation and that sentencing be set for Thursday, April 10, 2008 at 10:00 a.m.  All sentencing memoranda and motions must be filed by April 3, 2008.

SIGNED this _23rd_ day of _January_, 2008.

RICHARD W. ROBERTS
United States District Judge